```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JAMIE K.C. SCHER,                         :
                                          :
                Plaintiff,                :   04 Civ. 6169 (MBM)
                                          :
    -against-                             :   OPINION AND ORDER
                                          :
THE NATIONAL ASSOCIATION OF SECURITIES    :
DEALERS, INC., NASD REGULATION, INC.,     :
JAY LIPPMAN, MARILYN S. SCHWARTZ,         :
WILLIAM M. SHIELDS, HOWARD DAVIS, JON     :
HURD, CATHERINE M. FARMER, DENIS          :
MCCARTHY, FRANK ZARB, DAVID LIEBOWITZ,    :
AND MEGAN HERMAN,                         :
                                          :
                Defendants.               :
------------------------------------------X
```

APPEARANCES

JAMIE K.C. SCHER
(Plaintiff pro se)
12 Chestnut Lane
Woodbury, NY 11797

ALISON C. GOODING, ESQ.
(Attorney for Defendants)
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-3961

F. JOSEPH WARIN, ESQ.
MICHAEL F. FLANAGAN, ESQ.
ANDREW S. BOUTROS, ESQ.
(Attorneys for Defendants)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Suite 900
Washington, DC 20036
(202) 955-8500

MICHAEL B. MUKASEY, U.S.D.J.

In 1972, a former New York state senator and designee for the State Supreme Court bench named Seymour Thaler was convicted in the Southern District of New York of charges growing out of his participation in a scheme to sell stolen bearer bonds -- charges that included transporting those bonds in interstate commerce with knowledge that they were stolen, and perjury before the grand jury in an effort to conceal the scheme.  While serving his sentence, Thaler sued the Second New Haven Bank, claiming that his conviction, loss of public office, disbarment and public scorn were the bank's fault, because when the bonds were presented for payment by one of Thaler's co-conspirators, Jules Brassner, the bank had failed to consult a roster of stolen bonds in its possession and to warn Brassner that the bonds he proffered were on that list.  Judge Jon O. Newman, now a Senior Judge of our Court of Appeals but then a District Judge for the District of Connecticut, opened his memorable but regrettably unreported opinion dismissing the case as follows:

> When the apocryphal child murdered his parents and then sought mercy as an orphan, he set a standard for courtroom chutzpah that has not been rivaled until the filing of this lawsuit.

Thaler v. Second New Haven Bank, Civ. No. B-713, slip op. at 1 (D. Conn. Apr. 10, 1974).  Thaler sought compensatory and punitive damages exceeding $52 million, which would have eclipsed his projected profit of slightly more than $93,000 on the

1

underlying illicit transaction and reflected, as Judge Newman pointed out, "his expectation of profiting far more from his conviction than from his crime." Id. at 2.  However, even in this overreaching claim, Judge Newman found some virtue: "[N]ot even this plaintiff can postulate a theory on which the bank is liable for the consequences of his conviction for making a false statement to the grand jury," and therefore, "[a]pparently acknowledging that his gall is not unlimited, plaintiff has not alleged that the bank is responsible for his perjury[.]" Id. at 4.

In two respects -- the nature of her claim and the ad damnum -- plaintiff in the case at bar has surpassed (if that is the word) even the mark set by Thaler.  As described more fully below, our plaintiff, Jamie K.C. Scher, was a lawyer admitted to practice in the courts of the State of New York and in-house counsel to a small brokerage firm, Renaissance Financial Securities Corporation.  Her father, Stanley Cohen, had been barred for life from the securities business in 1973, but apparently was permitted to work at Renaissance Financial in a supervisory capacity.  On May 28, 1998, plaintiff, represented by counsel, was interviewed under oath and on the record before the National Association of Securities Dealers, Inc. ("NASD") and its associated body, NASD Regulation, Inc. ("NASDR"), which was conducting an investigation of Cohen's relationship with

2

Renaissance Financial. NASD and NASDR have regulatory responsibility, inter alia, with respect to securities firms. Scher perjured herself multiple times during the interview and suborned others, was duly prosecuted and convicted of perjury in the courts of the State of New York, and was disbarred. She now sues the NASD and the NASDR, and associated persons, for damages resulting from her perjury conviction and her disbarment, claiming that defendants were at fault in failing to advise her explicitly that she could be prosecuted for perjury if she lied under oath. Scher seeks more than $100 million in damages, which, even allowing for inflation since 1974, exceeds Thaler's $52 million demand, Thaler having been toppled from a far loftier perch than in-house counsel to a securities firm.

Defendants move to dismiss. For the reasons set forth below, the motion is granted.

I.

The following facts are drawn from the allegations in plaintiff's complaint, which are accepted as true for purposes of this motion, see Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996), except where contradicted by prior findings of the New York state courts in criminal proceedings related to this case. See, e.g., Maietta v. Artuz, 84 F.3d 100, 102 n.1 (2d Cir. 1996) ("Application of collateral estoppel from a criminal proceeding

3

to a subsequent civil proceeding is not in doubt."). On May 28, 1998, plaintiff Jamie K.C. Scher provided false and misleading testimony at an on-the-record interview in connection with an NASDR investigation of Renaissance Financial Securities Corporation and Stanley Cohen, plaintiff's father, who was working in a supervisory capacity at Renaissance Financial in direct violation of a 1973 SEC order barring him for life from engaging in such activity. People v. Cohen, 9 A.D.3d 71, 73, 82, 773 N.Y.S.2d 371, 374, 381 (1st Dep't 2004). At the time of the interview, plaintiff was a licensed stockbroker and associated member of the NASD who had passed the Series 7 and Series 63 securities examinations, and she served also as Renaissance Financial's general counsel, having been a practicing attorney in New York for approximately five years before she was hired in 1996. (Compl. ¶¶ 15, 30.)

According to the New York state courts, in addition to coaching other Renaissance Financial employees to mislead NASDR investigators regarding Stanley Cohen's role at the firm, Cohen, 9 A.D.3d at 80, 773 N.Y.S.2d at 379, plaintiff engaged in systematic and brazen perjury during her own sworn testimony before the NASDR. Id. at 82, 773 N.Y.S.2d at 381 (noting that plaintiff's "disingenuously crafty" responses were "in toto . . . clearly belied by the trial evidence"); People v. Cohen, No. 1474-2000, 2001 WL 1537669, at ¶¶ 34, 37 (Sup. Ct. N.Y. County

Nov. 1, 2001) (concluding that the trial record was "replete with evidence, direct and circumstantial," that plaintiff's statements "were not literally true" and that plaintiff's "sworn testimony, when viewed contextually, was demonstrably knowingly untruthful and intentionally misleading").

According to plaintiff, approximately one year after her on-the-record interview, defendant Jay Lippman, an NASD employee and former prosecutor in the Manhattan, New York District Attorney's Office, "began working with the [DA's office] by improperly sharing information with the intent to get participants in the [NASD] Regulatory Proceedings to change their 'stories' and cooperate with the NASD to avoid criminal penalties themselves." (Compl. ¶ 24.) This collaboration, plaintiff alleges, resulted in the DA's office "effectively [taking] over the NASD's 'prosecution,'" but "on a criminal level," with defendants Lippman, Schwartz, Shields, and Davis acting as "'unofficial extensions' to [sic] the DA's office based upon the prior relationship and affiliation Lippman maintained with the prosecutor's office." (Id. ¶ 50.)

Plaintiff subsequently was indicted on several charges arising out of her testimony before the NASDR, and was convicted, after a jury trial, on five counts of first-degree perjury. Cohen, 9 A.D.3d at 91, 773 N.Y.S.2d at 387. Plaintiff was sentenced to five years probation and ordered to pay a $10,000

5

fine and perform 1,500 hours of community service.  Id.  She has since also been disbarred.  (See Compl. ¶ 53.)

At the May 1998 NASDR interview, which was conducted on the record pursuant to NASD Rule 8210,[1] plaintiff was represented by William Singer, a former regional attorney in the NASD's New York District Office.  (Compl. ¶ 40; Defs.' Mem. Supp. Mot. to Dismiss 4.)  Before beginning her testimony, plaintiff was placed under oath and explicitly warned that

> because you are bound by oath and Procedural Rule 8210, you are expected to answer all questions truthfully and to the best of your knowledge.  Any failure to answer or failure to answer truthfully may be considered conduct inconsistent with high standards of commercial honor and could expose you to possible sanctions which include a bar, suspension, censure and fine.

(Compl. Ex. C at 7-8.)  Although plaintiff's counsel repeatedly stated his objection to the NASDR's determination that plaintiff could not assert the attorney-client privilege during her interview (id. Ex C. at 8, Ex. F), neither plaintiff nor her counsel invoked plaintiff's Fifth Amendment privilege against self-incrimination, stating expressly that "we do understand our obligations to respond and we will do so appropriately" (id. Ex.

---

[1] Under Rule 8210, the NASD may "require a member . . . to provide information orally, in writing, or electronically . . . and to testify, under oath or affirmation administered by a court reporter or a notary public if requested, with respect to any matter involved in [an] investigation, complaint, examination, or proceeding [authorized by the NASD bylaws or rules]."  (Compl. Ex. B.)  According to plaintiff, failure to comply with a Rule 8210 request subjects an NASD member to a fine (typically between $10,000 and $20,000) and revocation of all securities licenses.  (Compl. ¶ 39.)

6

C at 9).

Plaintiff now claims, however, that the oath and subsequent warnings were inadequate, arguing that the NASDR should have warned her additionally that "any failure on your part to truthfully answer any questions put before you could expose you to prosecution for perjury under both Federal and New York State perjury statutes." (Compl. ¶ 21.)  This alleged failure to warn her of the criminal penalties for perjurious testimony, plaintiff claims, violated her Fifth Amendment privilege against self-incrimination and due process rights,[2] and also constituted negligent and grossly negligent actions under state tort law.  (Id. ¶¶ 26, 55, 78.)  To remedy these alleged wrongs, plaintiff seeks unspecified compensatory damages, $100 million in punitive damages, consequential and incidental damages in bringing the instant action, and attorney's fees for all proceedings arising out of the NASDR investigation.  (Compl. at 27-28.)

Defendants move to dismiss plaintiff's complaint in its entirety, arguing, inter alia, that (i) defendants are subject to absolute immunity for conduct within the scope of the NASD's official duties, (ii) the NASD is not a state actor and thus constitutional principles do not attach to its proceedings, and

---

[2] Plaintiff alleges mistakenly that her due process claim arises under the Fourth Amendment; that claim is evaluated here instead as having arisen under the Fifth Amendment.

7

(iii) on the merits, plaintiff's constitutional rights were not violated. Each argument is considered in turn below.

II.

Plaintiff's entire complaint fails, first, because it is barred by the absolute immunity granted to the NASD, the NASDR, and their employees "for conduct falling within the scope of the [NASD's] regulatory and oversight functions." See D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93, 105 (2d Cir. 2001). As the Second Circuit held in D'Alessio, "the [New York Stock Exchange], when acting in its capacity as a [self-regulatory organization, or 'SRO'], is entitled to immunity from suit when it engages in conduct consistent with the quasi-governmental powers delegated to it pursuant to the [Securities] Exchange Act and the regulations and rules promulgated thereunder." Id. at 106. This holding applies equally to the NASD, an SRO that, like the NYSE, is subject to the substantial supervision of the SEC in the exercise of powers delegated to it under the Securities Exchange Act, and it applies also to the NASDR, a wholly owned subsidiary of the NASD that serves as its investigative and disciplinary arm. See Am. Benefits Group, Inc. v. Nat'l Ass'n of Sec. Dealers, No. 99 Civ. 4733, 1999 WL 605246, at *8 (S.D.N.Y. Aug. 10, 1999) ("[T]he NASD is entitled to absolute immunity when exercising its authority within the scope of its official duties."); P'ship Exch. Sec. Co. v. Nat'l Ass'n

8

of Sec. Dealers, Inc., 169 F.3d 606, 608 (9th Cir. 1999) (NASD protected by absolute immunity for conduct "under the aegis of the Exchange Act's delegated authority") (internal quotation marks omitted); Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 757 F.2d 676, 689 (5th Cir. 1985) (NASD disciplinary panel members entitled to absolute immunity for "actions taken within the outer scope of their official duties").

Here, plaintiff alleges that defendants violated her Fifth Amendment privilege against self-incrimination and her right to due process when the NASDR "forced" her to provide testimony at an on-the-record interview without warning her specifically that any false testimony she provided could expose her to criminal prosecution for perjury. (Compl. ¶ 26.) As defendants correctly note, however, plaintiff's Rule 8210 interview was conducted as part of the NASDR's investigation into whether Stanley Cohen was violating an SEC order barring him from working in a supervisory or proprietary capacity in the securities industry. Therefore, plaintiff's claims go to the core of the regulatory, investigatory, disciplinary, adjudicatory, and oversight functions delegated to the NASD under the Securities Exchange Act. See D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc., 279 F.3d 155, 157 (2d Cir. 2002) ("[NASDR] is responsible for conducting investigations and commencing disciplinary proceedings against [NASD] member firms and their associated member representatives relating to compliance with the

federal securities laws and regulations.") (second alteration in original) (internal quotation marks omitted). As a result, the NASD, the NASDR, and their employees are absolutely immune from plaintiff's suit. See D'Alessio v. N.Y. Stock Exch., Inc., 125 F. Supp. 2d 656, 658 (S.D.N.Y. 2000) (noting that absolute immunity "is a matter not simply of logic but of intense practicality, since, in the absence of such immunity, the Exchange's exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits").

III.

Plaintiff's claim that her constitutional rights were violated by the NASDR's conduct during and after the May 1998 on-the-record interview must be dismissed for an independent reason: Plaintiff has failed to demonstrate "that in denying plaintiff's constitutional rights, the defendant[s'] conduct constituted state action" -- a prerequisite to establishing a violation of the Fifth Amendment. See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 206 (2d Cir. 1999); D.L. Cromwell, 279 F.3d at 161. Courts have held consistently that "[t]he NASD is a private actor, not a state actor," and thus constitutional principles do not apply to its proceedings. See Desiderio, 191 F.3d at 206 ("[The NASD] is a private corporation that receives no federal or state funding. Its creation was not mandated by statute, nor does the government appoint its members or serve on

10

any NASD board or committee."); D.L. Cromwell, 279 F.3d at 162 ("It has been found, repeatedly, that the NASD itself is not a government functionary."); United States v. Shvarts, 90 F. Supp. 2d 219, 222 (E.D.N.Y. 2000) ("It is beyond cavil that the NASD is not a government agency; it is a private, not-for-profit corporation."), abrogated on other grounds by United States v. Coppa, 267 F.3d 132 (2d Cir. 2001); Martens v. Smith Barney, Inc., 190 F.R.D. 134, 135 (S.D.N.Y. 1999) (dismissing plaintiffs' due process claim because the NASD "exercise[s] insufficient state action to trigger constitutional due process protections"). As a result, the NASD's actions "cannot be imputed to the government nor can its agents bind the government." Shvarts, 90 F. Supp. 2d at 222.

Plaintiff's multiple, and sometimes contradictory, efforts to circumvent these clear holdings are unavailing. For example, contrary to plaintiff's contention, it is by no means "inconsistent" to find that, on the one hand, the NASD exercises insufficient state action to trigger constitutional protections in a case such as this, while nevertheless holding that the NASD is entitled to absolute immunity in the exercise of its quasi-public regulatory duties. See Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 58 (2d Cir. 1996) ("Although the Exchange is a private, rather than a governmental entity, immunity doctrines protect private actors when they perform important governmental functions.") (emphases added); Martens, 190 F.R.D. at 138 (noting

that the NASD's "dual public/private status requires caution in reading precedents because a ruling that an exchange is private for a particular purpose does not necessarily mean that it is private for all purposes"); Am. Benefits Group, 1999 WL 605246, at *8 (holding both that the NASD is entitled to absolute immunity when acting within the scope of its official duties, and that the NASD is not a state actor in its role as a self-regulatory organization).

Plaintiff's effort to show improper collusion or collaboration between the NASD and the Manhattan District Attorney's Office likewise fails. That NASDR investigator Jay Lippman shared information with the DA's office, an office for which he once worked, approximately one year after plaintiff's on-the-record interview, and that such collaboration ultimately led to plaintiff's criminal prosecution, does not in itself demonstrate that a "close nexus" existed between the challenged conduct of the NASD and a state actor, D.L. Cromwell, 279 F.3d at 161 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)), especially when no allegation has been made that the DA's office was even aware of plaintiff's Rule 8210 interview at the time it occurred. Id. at 163 (no governmental nexus established where demands for Rule 8210 interviews "issued directly from the [NASDR] as a product of its private investigation, and . . . none of the demands was generated by governmental persuasion or collusion -- either directly or

12

through [an NASDR unit]"); United States v. Szur, No. S5 97 Cr. 108, 1998 WL 132942, at *13, 15 (S.D.N.Y. Mar. 20, 1998) (rejecting defendants' claim that the NASD and SEC "acted pretextually" and requested documents "to aid an ongoing federal criminal investigation" where U.S. Attorney's Office and FBI "neither requested that these searches take place nor were . . . aware that they had taken place until after they had been completed"); Marchiano v. Nat'l Ass'n of Sec. Dealers, Inc., 134 F. Supp. 2d 90, 95 (D.D.C. 2001) ("The court is aware of no case . . . in which NASD Defendants were found to be state actors either because of their regulatory responsibilities or because of any alleged collusion with criminal prosecutors.").

Although testimony in an on-the-record interview before the NASD may well "entail exposure to criminal liability, . . . that in itself is not enough to establish the requisite governmental nexus" needed to trigger the privilege against self-incrimination. D.L. Cromwell, 279 F.3d at 162; see also Shvarts, 90 F. Supp. 2d at 222 ("It is . . . beyond cavil that questions put to the defendants by the NASD in carrying out its own legitimate investigative purposes do not activate the privilege against self-incrimination . . . ."); United States v. Solomon, 509 F.2d 863, 869 (2d Cir. 1975) ("It is not enough to create an agency relationship that Solomon's conduct violated both a rule of NYSE, thereby subjecting him to disciplinary action by that body, and federal law, with consequent liability to civil and

13

criminal enforcement proceedings by the Government."). This is particularly the case where, as here, an NASD member is prosecuted not because her testimony was self-incriminating, but rather because it was perjurious.

IV.

Beyond these independent grounds for dismissing plaintiff's complaint, plaintiff's claims on the merits are of gossamer durability. At the time plaintiff perjured herself before the NASDR, she was an experienced attorney and licensed stockbroker who was accompanied at the on-the-record interview by experienced counsel, himself a former NASD regional attorney. Plaintiff's contention here that she should have been warned that perjury is a crime, even though she already had been placed under oath -- and that she should now be compensated to the extent of $100 million or more in damages for this supposed deprivation of her constitutional rights -- is without any merit whatsoever. See, e.g., Brogan v. United States, 522 U.S. 398, 404 (1998) ("Whether or not the predicament of the wrongdoer run to ground tugs at the heartstrings, neither the text nor the spirit of the Fifth Amendment confers a privilege to lie."); United States v. Apfelbaum, 445 U.S. 115, 127 (1980) ("[T]he Fifth Amendment privilege against compulsory self-incrimination provides no protection for the commission of perjury . . . ."); United States v. Winter, 348 F.2d 204, 210 (2d Cir. 1965) ("Once a witness

swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth. It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.") (internal quotation marks and footnote omitted). New York's perjury statute applies, on its face, to a "proceeding before any court, body, agency, public servant or other person authorized by law to conduct such proceeding and to administer the oath or cause it to be administered," N.Y. Penal Law § 210.00(3) (McKinney 2005), and thus unambiguously reaches NASD Rule 8210 interviews. People v. Cohen, 718 N.Y.S.2d 147, 153 (Sup. Ct. N.Y. County 2000). Plaintiff's alleged ignorance of that provision -- the only plausible basis for arguing that she needed a reminder not to perjure herself -- provides no excuse for her actions. See, e.g., Barlow v. United States, 32 U.S. 404, 411 (1833) ("It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally . . . ."); United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 277 (D.D.C. 2002) ("An attorney is presumed to know the law.").

* * *

For the reasons stated above, defendants' motion is granted and plaintiff's complaint is dismissed.

SO ORDERED:

*[signature]*

Michael B. Mukasey
U.S. District Judge

Dated: New York, New York
June 29, 2005